```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND

                                :
FIREMAN'S INSURANCE COMPANY OF
WASHINGTON, D.C.                :

     v.                         :  Civil Action No. DKC 22-3153

                                :
NATIONWIDE MUTUAL INSURANCE
COMPANY                         :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance dispute are the motion for summary judgment filed by Nationwide Mutual Insurance Company ("Nationwide" or "Defendant") (ECF No. 33), and the cross motion for summary judgment filed by Firemen's Insurance Company of Washington, D.C. ("Firemen's" or "Plaintiff"). (ECF No. 37). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be denied.

**I. Background**[1]

Flats 8300 Owner, LLC ("Flats") owned an apartment complex in Maryland. (ECF No. 34, at 3). Donohoe Companies, Inc. ("Donohoe") was the general contractor for the building, and Donohoe hired MAAMECH Mid-Atlantic Air, Inc. ("MAA") to purchase and install an HVAC system manufactured by Daikin. (ECF No. 34, at 4). MAA

---

[1] Unless otherwise noted, the following facts are undisputed.

obtained a performance and surety bond from its surety. (ECF No. 34, at 4). MAA subcontracted with Havtech Solutions, Inc. ("Havtech") to provide the Daikin HVAC system. (ECF No. 34, at 6).

In 2015, MAA subcontracted with NOVA HVAC Services LLC ("NOVA"). The parties dispute NOVA's role in the project. According to Defendant, MAA hired NOVA to "install a complete and functioning HVAC system." (ECF No. 34, at 5). Plaintiff contends that "[w]hile NOVA's subcontract stated it would 'provide appropriate labor and tools to install a complete and functioning mechanical system,' that merely meant '[NOVA] needed to provide the tools that were needed for it.'" (ECF No. 38, at 7-8) (quoting ECF No. 38-1, at 32). According to Plaintiff, MAA hired NOVA "to install the refrigerant piping needed for the HVAC system and connect them to the HVAC system's component parts." (ECF No. 38, at 7). Plaintiff also contends that MAA hired a separate ducting subcontractor to do the duct work. (ECF No. 38, at 8).

NOVA installed refrigerant piping between May 13, 2015, and January 31, 2016. (ECF No. 34, at 7). Defendant asserts that NOVA "worked to install the piping and certain other portions of the Daikin," (ECF No. 34, at 5), while Plaintiff contends that "[o]ther than attaching the pipes, NOVA did not work on any of the component parts." (ECF No. 38, at 8). According to Plaintiff, Daikin's HVAC system installation required that "the copper

2

refrigeration piping joints be brazed with nitrogen purging." (ECF No. 38, at 9) (citation omitted). Plaintiff argues that NOVA installed the pipes without performing the brazing "quite often," leading to "the formation of copper oxide on the interior surface of the piping, which in turn caused the Daikin VRV system failures" at the building. (ECF No. 38, at 9).

Defendant disputes that the copper oxide caused the failures in the HVAC systems, but the parties agree that oxidation damage only occurs once the HVAC systems are started up. (ECF Nos. 34, at 9-11; 38, at 9-10). Plaintiff contends that the HVAC systems were started up between November 22, 2015, and June 9, 2016. (ECF No. 38, at 9). Defendant argues that only two of thirty-seven systems were started up before December 15, 2015. (ECF No. 34, at 25).

Ten of the thirty-seven systems were started up while NOVA was on site. (ECF Nos. 34, at 10; 38, at 24-25). Plaintiff argues that NOVA was involved in starting up all thirty-seven systems because "[i]t was responsible for one of multiple steps in the startup process, and no system was started without NOVA's involvement." (ECF No. 38, at 9).

MAA was covered under a commercial general liability insurance policy issued by Firemen's for the policy period of December 15, 2014 to December 15, 2015. (ECF No. 34, at 11). NOVA was covered under a commercial general liability insurance policy

3

issued by Nationwide for the policy period of December 5, 2014, to December 5, 2015, and renewed for the policy period of December 5, 2015, to December 5, 2016.  (ECF No. 34, at 12).  The Nationwide policy also included an endorsement for MAA as an additional, limited insured.  (ECF No. 34, at 15).  The commercial general liability forms under both policies "are identical in all material respects."  (ECF No. 34, at 12).

Issues eventually developed with the HVAC system.  According to Defendant, the two systems started up before December 15, 2015, did not experience a component failure until 2019.  (ECF No. 34, at 25).  In June 2020, Flats filed suit against Donohoe and MAA in the Circuit Court for Montgomery County.  (ECF No. 34, at 5).  In November 2020, Flats filed a first amended complaint.  (ECF No. 34, at 5).  "In February 2021, Donohoe filed a [t]hird-[p]arty [c]omplaint against MAA's [s]urety seeking to recover against MAA's [p]erformance [b]ond."  (ECF No. 34, at 5).  Flats alleged that MAA incorrectly installed the HVAC system because it installed the copper refrigerant pipes "without performing nitrogen purging during the 'brazing' process."  (ECF No. 34, at 5).  Flats further alleged that this failure would cause damage.  (ECF No. 34, at 6). Additionally, Flats alleged that on December 13, 2015, Havtech emailed MAA reporting that Havtech noticed MAA installing the pipes without brazing them.  Flats alleged:

4

> Havtech noted that "this will likely result in oxidation inside of the copper pipe and will likely cause restrictions in the system." Havtech further noted that "[r]estriction created by contaminants from oxidation will likely cause the systems to fail" and that in fact "we are seeing operational problems in one system that has already been started at this project."

(ECF Nos. 34-1, at 6; 40, at 3).

MAA's surety filed a claim under Fireman's policy. Firemen's tendered the lawsuit to Nationwide, stating that MAA was an additional insured under Nationwide's policy. (ECF No. 34, at 6). Nationwide denied coverage and did not participate in the settlement negotiations. (ECF No. 38, at 11).

The lawsuit over the "[a]lleged [c]opper [o]xide [c]ontamination" eventually settled for $7,300,000, mainly to cover past and future repair costs to the HVAC systems. (ECF Nos. 38, at 11; 34-13, at 3). Firemen's contributed $1,000,000 toward the settlement and $100,000 toward MAA's defense costs. (ECF No. 38, at 11-12).

Plaintiff filed a complaint against Defendant on December 6, 2022, for subrogation and equitable contribution. (ECF No. 1). Plaintiff asserts diversity jurisdiction. On February 1, 2023, Defendant filed an answer to Plaintiff's complaint. (ECF No. 18). On July 2, 2024, Defendant filed a motion for summary judgment. (ECF No. 33). On July 23, 2024, Plaintiff filed a cross motion for summary judgment. (ECF No. 37). On August 6, 2024, Defendant filed a reply in support of its motion for summary judgment and in

5

opposition to Plaintiff's cross motion for summary judgment. (ECF No. 39). On August 20, 2024, Plaintiff filed a reply in support of its cross motion for summary judgment. (ECF No. 40).

## II. Standard of Review

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

When faced with cross motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation and quotations omitted). In doing so, it must "take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party

opposing that motion." *Id.* (internal citation and quotations omitted).

### III. Analysis

#### A. Choice of Law

The parties agree that Maryland law governs Plaintiff's subrogation and equitable contribution claims and the interpretation of Firemen's policy. (ECF Nos. 34, at 19-20; 38 at 18). The parties also agree that Virginia law governs the interpretation of Nationwide's policy. (ECF Nos. 34, at 19-20; 38 at 18).

#### B. Plaintiff's Claims

Plaintiff seeks to recover $1.1 million from Defendant for the money Plaintiff paid as part of the settlement. (ECF No. 1, at 17). Plaintiff's complaint has two counts: subrogation and equitable contribution. (ECF No. 1, at 13-16). Defendant asserts that Defendant is entitled to summary judgment on both claims because the claims in the underlying lawsuit are not covered under Firemen's and Nationwide's policies. (ECF No. 34, at 24). Plaintiff argues that Plaintiff is entitled to summary judgment because Nationwide owed coverage to MAA, and because Nationwide failed to provide coverage, Firemen's was required to contribute toward MAA's settlement and defense. (ECF No. 38, at 6).

Under Maryland law, in order to recover under a subrogation claim, a plaintiff must show "(1) the existence of a debt or

7

obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights or interests." *Cont'l Cas. Co. v. Old Republic Ins. Corp.*, No. 19-CV-1306-CCB, 2019 WL 6896179, at *3 (D.Md. Dec. 18, 2019) (quoting *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 742 (2007)).

Under Maryland law, in order to recover under an equitable contribution claim, a plaintiff must show "a common contractual liability or obligation." *Cont'l Cas. Co.*, 2019 WL 6896179, at *2 (citing *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 280–81 (1996)). "A common liability arises when the parties 'are jointly liable or jointly and severally liable on an obligation.' *Cont'l Cas. Co.*, 2019 WL 6896179, at *2 (quoting *Helmet House Corp. v. Stoddard*, 861 So.2d 1178, 1180 (Fla. Dist. Ct. App. 2003)).

### C. Defendant's Motion for Summary Judgment

Defendant challenges many aspects of Plaintiff's claims, raising coverage issues under both policies. Distilled to its essence, in order to determine whether Firemen's can recover from Nationwide under subrogation or equitable contribution, the court must determine whether Firemen's was required to indemnify and defend MAA in the underlying lawsuit. Accordingly, while the parties discuss both Firemen's and Nationwide's policies,

8

resolution of this case depends on whether Firemen's was obligated to contribute to MAA's defense and the settlement, or whether Firemen's was a volunteer. Whether Firemen's was a "volunteer" or had "a common contractual liability or obligation" depends on whether Firemen's policy insured the alleged damage to the HVAC system in the underlying lawsuit. This, in turn, depends on three questions: (1) whether the alleged damage occurred during Firemen's policy period, (2) whether the alleged damage constituted an "occurrence" under Firemen's policy, and (3) whether an exclusion applied to exclude otherwise covered damage.

**1. Property Damage During Firemen's Policy Period**

Firemen's policy covered MAA from December 15, 2014, to December 15, 2015. (ECF No. 34, at 11). Firemen's policy states in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
> . . . .
> b. This insurance applies to "bodily injury' and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period.

(ECF No. 34-14, at 149).

The parties dispute whether the alleged damage to the HVAC system happened during Firemen's policy period, and at what point

damage occurs under Maryland law. (ECF Nos. 34, at 25; 38, at 23-24). More fundamentally, however, the parties dispute the cause of the alleged damage itself. (ECF Nos. 34, at 11 n.1; 38, at 23; 39, at 4-5).

Plaintiff argues that Defendant does not dispute NOVA failed to braze the pipes properly. (ECF No. 38, at 23). Plaintiff cites to a footnote in Defendant's motion for summary judgment and states that Defendant "concedes for the purposes of its Motion that the property damage at issue was caused by NOVA's failure to properly braze the joints." (ECF No. 38, at 23 n.3). While Defendant does not seem to dispute that NOVA failed to braze the pipes properly, Defendant does however "dispute[] [Plaintiff's expert's] opinions and conclusions that copper oxide was the cause of the various component failures in the Daikin VRV System at issue in the Underlying Suit" (ECF Nos. 39, at 4; 34, at 11 n.1).

Defendant relies on testimony from its expert who disputes Plaintiff's expert's opinion and states:

> [T]his system did have issues. It also had very low refrigerant. It also had oil issues. It had electrical issues. It had a lot of things that explain why this unit failed, and that explanation does not point to oxidation. That explanation points to all of this other stuff that they did wrong.

(ECF No. 39-1, at 7-8).

Given this level of factual dispute, the question of whether the alleged damage occurred during Firemen's policy period, and

the overarching issue of whether Firemen's was a volunteer cannot be decided on summary judgment.

### 2. Property Damage Resulting from an Occurrence

Firemen's and Nationwide's policies covered "'bodily injury' or 'property damage' [that] is caused by an 'occurrence.'" (ECF Nos. 34-14, at 149; 34-15, at 16). The parties dispute whether the alleged damage to the HVAC system constituted an "occurrence" under the policies. Both policies define "occurrence" as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF Nos. 34-14, at 162; 34-15, at 30). The policies do not define "accident," but "[i]n Maryland, an 'accident' is an 'act of negligence . . . [where] the resulting damage takes place without the insured's actual foresight or expectation.'" *State Auto. Mut. Ins. Co. v. Old Republic Ins. Co.*, 115 F.Supp.3d 615, 621 (D.Md. 2015) (quoting *French v. Assurance Co. of Am.*, 448 F.3d 693, 698 (4th Cir. 2006)). This is a subjective test. *French*, 448 F.3d at 698.

The United States Court of Appeals for the Fourth Circuit has stated:

> We hold that, under Maryland law, a standard 1986 commercial general liability policy form published by the ISO does not provide liability coverage to a general contractor to correct defective workmanship performed by a subcontractor. We also hold that, under Maryland law, the same policy form provides liability coverage for the cost to remedy unexpected and unintended property damage to the contractor's otherwise nondefective work-product caused by the subcontractor's defective workmanship.

11

> With respect to this last holding, we assume *arguendo* that no other policy exclusion applies.

*French*, 448 F.3d at 706.

Therefore, Firemen's policy does not cover "defective workmanship performed by a subcontractor," meaning, damage to the pipes that NOVA incorrectly brazed. The parties, however, dispute whether the policy covered damage to other parts of the HVAC system that were damaged. Plaintiff contends that component parts of the HVAC system, such as compressors, valves, and coils, were outside the scope of NOVA's work. (ECF No. 38, at 19). Plaintiff argues that "[t]he defective workmanship of NOVA in failing to properly braze the copper pipes therefore caused damage to the otherwise nondefective property of others, which constitutes an 'occurrence' under the Nationwide Policy." (ECF No. 38, at 19).

Defendant argues that even if damage to other component parts occurred during the policy period, "any such damage did not arise from an occurrence because MAA was aware of the alleged instances of improper brazing and the fact that damage could have been expected as a result." (ECF No. 39, at 7). Defendant relies on MAA field foreman Christopher Rouzer's deposition who testified that he observed NOVA brazing the pipes without the nitrogen "on multiple occasions." (ECF No. 39-3, at 4). Defendant also argues that NOVA's role was not limited to installation of the pipes;

12

rather, "NOVA performed work on each and every component of the Daikin VRV System." (ECF No. 39, at 8).

Plaintiff responds that MAA did not subjectively expect damage. First, Plaintiff argues that Mr. Rouzer reported a "possibility" of damage, not a certainty, and Mr. Rouzer also observed NOVA properly brazing the pipes on other occasions. (ECF No. 40, at 6). Additionally, MAA expected NOVA to install the pipes correctly once MAA warned them to do so.

Once again, there is a genuine dispute of material facts regarding the scope of NOVA's work and whether MAA subjectively expected damage as a result of NOVA's improper brazing.

### 3. Exclusion 2.j(6)

Both policies contain an exclusion, exclusion 2.j(6), excluding coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (ECF Nos. 34-14, at 152-53; 34-15, at 19-20). "Your work" is defined as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." (ECF Nos. 34-14, at 164; 34-15, at 31).

Defendant argues that even if there was damage from an occurrence during the policy period, this exclusion in Firemen's policy applies to exclude damage "to the insured's work taking place during ongoing operations." (ECF No. 34, at 28). Defendant

13

cites to somewhat dated, non-Maryland cases and argues that this exclusion applies to exclude coverage for MAA's entire scope of work. (ECF No. 34, at 29).

Plaintiff argues under Nationwide's policy, contending that the exclusion does not exclude coverage to the entire HVAC system because "NOVA's work was limited to installing copper pipes." (ECF No. 38, at 22). Plaintiff further argues that Virginia courts have not defined "that particular part," and this court should "apply the more reasonable interpretation that the Nationwide Policy includes the word 'particular' so as to limit the exclusion to specific property being worked on by NOVA." (ECF No. 38, at 22).

The cases discussing and applying this exclusion appear to be inconsistent and at times in conflict. Importantly, the question of whether the exclusion applies is fact specific. *See Salehi v. Builders Mut. Ins. Co.*, No. 21-CV-2031-BPG, 2023 WL 2712908, at *8 (D.Md. Mar. 30, 2023) (stating that "no Maryland court has squarely addressed the meaning of the phrase 'that particular part,' found in exclusions j(5) and j(6)" and ultimately finding based on the facts and cases applying the law in other states that exclusion j(6) excluded damage to areas other than the exact area on which the insured worked).

The parties' motion papers are not sufficiently focused on this discrete tricky issue. The court's own research found that

14

courts applying the law of different states came out differently, but the outcome depended on the facts before the court—including, for example, the precise scope of the work performed, the relationship between that work and the so-called non-defective work, and the contours of the entire project. As discussed above, several material facts are at issue, and the parties' presentations do not make it possible to resolve this issue on the current record.

### 4. Reasonableness of the Settlement

Plaintiff and Defendant also dispute whether the settlement was reasonable. (ECF Nos. 34, at 30-31; 38, at 28). Because there is genuine dispute of material facts, the court need not make a determination at this time as to whether Plaintiff's contribution to the settlement was reasonable.

### D. Plaintiff's Cross Motion for Summary Judgment

Based on the foregoing discussion denying Defendant's motion for summary judgment, it follows that Plaintiff's cross motion for summary judgment must also be denied. There is a genuine dispute of material facts; therefore, Plaintiff has not shown that it is entitled to judgment as a matter of law.

**IV. Conclusion**

For the foregoing reasons, both motions for summary judgment will be denied.  A separate order will follow.

                          /s/
DEBORAH K. CHASANOW
United States District Judge
